CHIEF JUSTICE WILLIAMS
delivered the opinion op the court:
August 7, 1865, E. W. Hawkins, with J. F. Mundy as his security, executed to J. T. Robinson the following note;
“$100. Warsaw, 7th August, 1865.
“One year after date we, or either of us, promise to pay Jno. T. Robinson or order, one hundred dollars, for value received, for the hire of a negro woman named Martha for one year from this date, and in addition agree to clothe *343 and pay all physicians’ bills during the year for said girl.
E. W. Hawkins,
“ J. F. Mundy.”
As the amendment to the United States Constitution, abolishing slavery, was declared adopted and in force on December 18, 1865, and which this court has heretofore recognized as a part of the supreme fundamental law of the land, the hirer insists that he should be allowed an abatement of hire from the date of its adoption, but which the court below disallowed; and this is the only question presented for our revision.
In Hughes vs. Todd (2 Duvall, 189), this court held, that “ the mere contract of hiring implies a contract for indemnity, if the hirer shall be evicted or disturbed by any lawful intrusion or eviction under a title paramount, or by the act or authority of the other contracting party;” but that “ there is no implied guarantee of full and useful service the entire term, or for any portion of it. Consequently, the consideration being entire and only for the title to the service to the slave during the term, the sickness or death or escape of the hired negro will be no legal failure of consideration, total or partial, and the resulting loss must be borne by the hirer.”
This is consistent and harmonious with the long recognized doctrine that, in sales of chattels or bailment thereof — and the hire of a slave is a limited sale for the term of the service — there is an implied warranty of title; consequently, should the title fail, from any legal cause, by either an eviction by superior title, or authorized act of the government, then there is so far a failure of consideration, and the tenant or bailee will be entitled to a pro tanto abatement.
Upon these principles the court was harmonious; but, as to whether the eviction was legal because the slave *344 had availed himself of the privilege of volunteering in the army of the United States, by virtue of a congressional statute for such purpose, and which providing that he, his wife and children, should be free, the court was divided, the majority holding that such statute of Congress was unconstitutional and void, and, therefore, could authorize no legal interference with the hirer’s right, or disturb the owner’s legal right to his slave. But there is a broad difference between a mere act of Congress and a constitutional amendment.
The United States Constitution provides for its own amendment — how to be made and declared; whatever, therefore, we might as individuals think of the manner of the adoption of this Constitutional Amendment, it has been proclaimed by the proper authority as part of the supreme law of the land, accepted and acted on by all the departments of government, both State and Federal, and has been recognized by this court.
• It necessarily and legally results, therefore, that from the day said amendment was proclaimed by the Secretary of State of the United States, as a part of the National Constitution, Robinson’s right to said negro ceased, and she became a free woman, and was under no legal obligation to serve her former owner or his bailee; and Hawkin’s right to claim further service from her, because of his contract with Robinson, also ceased; and, because of this legal failure of title, the hirer is entitled to an abatement of the promised price.
This we regard as the law from the mere act of hiring ; but the language of .this note makes it still stronger; for it expresses the continuing consideration for the hire of the negro “for one pear from this date.”
Wherefore, the judgment is reversed, with directions for further proceedings consistent herewith.